IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CR-112-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| LUIS HERNANDEZ-ESPINOZA, | ) | |
| | ) | |
| Defendant. | ) | |

On September 14, 2020, Luis Hernandez-Espinoza ("Hernandez-Espinoza" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 137]. On May 4, 2022, the government responded in opposition [D.E. 151, 152]. As explained below, the court denies Hernandez-Espinoza's motion.

I.

On January 13, 2010, pursuant to a written plea agreement, Hernandez-Espinoza pleaded guilty to conspiracy to possess with intent to distribute more than five kilograms of cocaine (count one) and illegal reentry of an aggravated alien (count three). See [D.E. 43]; [D.E. 95] 19–29. On June 8, 2010, the court held Hernandez-Espinoza's sentencing hearing. See [D.E. 61]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). The court calculated Hernandez-Espinoza's total offense level to be 35, his criminal history category to be VI, and his advisory guideline range to be 292 to 365 months' imprisonment on count one and 240 months' imprisonment on count three. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a) and the parties's arguments, the court sentenced Hernandez-Espinoza to 312

months' imprisonment on count one and 240 months' concurrent imprisonment on count three and five years' supervised release on count one and three years' concurrent supervised release on count three. See [D.E. 63] 2–3.

On June 11, 2010, Hernandez-Espinoza moved for reconsideration of his sentence [D.E. 60]. On June 16, 2011, Hernandez-Espinoza moved to vacate his sentence under 28 U.S.C. § 2255 [D.E. 70]. On July 7, 2011, Hernandez-Espinoza moved to recall the mandate [D.E. 74]. On July 29, 2011, the United States moved to dismiss Hernandez-Espinoza's motion to vacate [D.E. 75]. On September 29, 2011, Hernandez-Espinoza moved to supplement his section 2255 motion [D.E. 81]. On October 14, 2011, Hernandez-Espinoza filed an appeal with the United States Court of Appeals for the Fourth Circuit [D.E. 82, 83].

On October 31, 2011, Hernandez-Espinoza moved under 18 U.S.C. § 3582 to reduce his sentence [D.E. 84]. On January 4, 2012, the court denied Hernandez-Espinoza's motion to reduce or vacate his sentence [D.E. 87]. On January 13, 2012, Hernandez-Espinoza appealed to the Fourth Circuit [D.E. 89]. On February 22, 2012, the Fourth Circuit denied Hernandez-Espinoza's petition for writ of mandamus. See United States v. Hernandez-Espinoza, 466 F. App'x 197 (4th Cir. 2012) (per curiam) (unpublished). On December 4, 2012, the Fourth Circuit dismissed Hernandez-Espinoza's appeal. See United States v. Hernandez-Espinoza, 490 F. App'x 608 (4th Cir. 2012) (per curiam) (unpublished). On August 22, 2013, Hernandez-Espinoza moved for a writ of error coram nobis [D.E. 100]. On September 10, 2013, the court denied Hernandez-Espinoza's motions [D.E. 103].

On April 21, 2014, Hernandez-Espinoza moved for a sentence reduction [D.E. 104]. On April 22, 2014, the court denied the motion for a sentence reduction [D.E. 105]. On November 7, 2014, Hernandez-Espinoza moved for retroactive application of sentencing guidelines [D.E. 106,

2

107]. On July 9, 2015, the court denied the motion for sentence reduction [D.E. 108]. On July 30, 2015, Hernandez-Espinoza appealed to the Fourth Circuit [D.E. 110]. On December 22, 2015, the Fourth Circuit dismissed the appeal. See United States v. Hernandez-Espinoza, 627 F. App'x 210 (4th Cir. 2015) (per curiam) (unpublished). On January 12, 2016, the Fourth Circuit issued a stay of mandate [D.E. 116]. On February 2, 2016, the Fourth Circuit denied the petition for rehearing and petition for rehearing en banc [D.E. 117]. On December 2, 2016, Hernandez-Espinoza filed a petition for writ of certiorari with the Supreme Court of the United States [D.E. 119]. On June 19, 2017, the Supreme Court denied the petition. See United States v. Hernandez-Espinoza, 137 S. Ct. 2264 (2017). On February 15, 2017, Hernandez-Espinoza moved for appointment of counsel [D.E. 121]. On the same date, the court granted the motion for appointment of counsel [D.E. 122].

On November 22, 2019, Hernandez-Espinoza moved pro se for reduction of sentence under the First Step Act [D.E. 127]. On December 9, 2019, the Federal Public Defender filed a notice of appearance on behalf of Hernandez-Espinoza [D.E. 128]. On July 1, 2020, the court denied the motion for reduction of sentence under the First Step Act [D.E. 131]. On July 27, 2020, Hernandez-Espinoza appealed [D.E. 132]. On January 22, 2021, the Fourth Circuit affirmed [D.E. 140, 141].

II.

On December 21, 2018, the First Step Act took effect. See First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5249 (2018). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

3

earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission ("Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

       (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic

4

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known

> > solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

5

or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (quotation omitted). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, 30 F.4th 189, 194–95, 198–200 (4th Cir. 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Hernandez-Espinoza applied to the warden for compassionate release. See [D.E. 151] 3. More than 30 days lapsed since he submitted his application. See id. Hernandez-Espinoza has met

6

the exhaustion requirement. See United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021).

Hernandez-Espinoza seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his age, and medical conditions. See [D.E. 137].

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Hernandez-Espinoza is 51 years old and has depression, PTSD, and chronic, viral Hepatitis B. See [D.E. 151] 4. He is also overweight. See id.

Hernandez-Espinoza argues that these conditions put him at heightened risk of serious infection from COVID-19. See [D.E. 137] 5–8. Hernandez-Espinoza is vaccinated and boosted. See [D.E. 151] 1, 7–9. Hernandez-Espinoza's vaccine provides protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support

7

a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 2022 WL 1611819 (U.S. May 23, 2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Hernandez-Espinoza from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Therefore, reducing Hernandez-Espinoza's sentence because of his risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "age of the defendant" policy statement, compassionate release may be warranted if the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. n.1(B). Hernandez-Espinoza is 51 years old and has not served ten years or 75 percent of his sentence. Thus, he does not qualify under the "age of the defendant" policy statement. Regardless, the court considers Hernandez-Espinoza's age and health under the "other reasons" policy statement.

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Hernandez-Espinoza's medical conditions, his age, his rehabilitation efforts,

8

and his supportive family together are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Hernandez-Espinoza's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Hernandez-Espinoza is 51 years old and is incarcerated for conspiracy to possess with intent to distribute more than five kilograms of cocaine and illegal reentry of an aggravated alien. See PSR ¶¶ 1–3. Hernandez-Espinoza was responsible for conspiring to distribute 42.61 kilograms of cocaine, 2.04 kilograms of cocaine base (crack), and 453 grams of methamphetamine. See id. ¶¶ 9–15. Hernandez-Espinoza is a career drug dealer and his criminal conduct is escalating. See id. ¶¶ 9–15, 18–21.

When Hernandez-Espinoza committed his latest drug trafficking crime, Hernandez-Espinoza had an extensive criminal history. See id. ¶¶ 18–27. Hernandez-Espinoza had convictions for felony importing into the United States from Republic of Mexico a quantity less than 50 kilograms of marijuana, possession of a controlled substance with intent to manufacture, deliver, or sell, failure to appear, unlawful possession of controlled substance with intent to deliver marijuana over 70 pounds, reentry of a deported alien, no operator's license (two counts), and driving while impaired. See id.

While federally incarcerated, Hernandez-Espinoza has taken some positive steps. See [D.E.151] 7–9. Hernandez-Espinoza, however, has committed several infractions, including being

9

insolent to staff, phone abuse, possessing drugs/alcohol, being in an unauthorized area, and refusing a work program assignment. See id. at 10–11.

The court must balance Hernandez-Espinoza's rehabilitation efforts with his serious criminal conduct, his terrible criminal history, his mixed performance in federal custody, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, No. 20-1650, 2022 WL 2205029, at *12 (U.S. June 27, 2022); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Hernandez-Espinoza's potential exposure to COVID-19, his medical conditions, his age, and his release plan. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Hernandez-Espinoza's arguments, the government's persuasive response, the need to punish Hernandez-Espinoza for his serious criminal behavior, to incapacitate Hernandez-Espinoza, to promote respect for the law, to deter others, and to protect society, the court denies Hernandez-Espinoza's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 137].

10

SO ORDERED. This 5 day of July, 2022.

/s/ James C. Dever
JAMES C. DEVER III
United States District Judge